IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


VERNON NORMAN N. EARLE,

        Petitioner,

vs.                                No. CIV 01-158 JP/LFG

IMMIGRATION AND NATURALIZATION
SERVICE,

        Respondent.


**MAGISTRATE JUDGE'S FINDINGS
AND RECOMMENDED DISPOSITION[1]**

**Findings**

1.  This is a proceeding on a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

Petitioner Vernon Norman N. Earle ("Earle") was, at the time he filed his petition, confined at the

Torrance County Detention Facility in New Mexico.[2]  He brings this petition against the Immigration

and Naturalization Service ("INS") under 28 U.S.C. § 2241, seeking to have the Court order his

immediate deportation.  The Court, being without subject matter jurisdiction to provide the relief

requested, recommends that Earle's petition be dismissed.

---

[1] Within ten (10) days after a party is served with a copy of these findings and recommendations,
that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and
recommenda-tions.  A party must file any objections with the Clerk of the U.S. District Court within
the ten-day period allowed if that party wants to have appellate review of the findings and
recommendations.  If no objections are filed, no appellate review will be allowed.

[2] Earle is currently incarcerated in a federal penitentiary in Louisiana.

2.  Earle is currently serving a sentence imposed in 1987 by the Superior Court of the District of Columbia, following his conviction by a jury of the crimes of murder I, assault with  a dangerous weapon, and carrying a pistol without a license.  He was sentenced to 20 years to life on the first charge, 3 to 9 years on the second charge, and 3 to 9 years on the third charge, all sentences to run consecutively.  [Doc. 8, Ex. 3].

3.  Earle alleges in his petition that the INS ordered him deported at a time when the appeal of his criminal conviction was pending in the District of Columbia appellate courts.  Arguing that this chronology violates his right to due process under the Fifth Amendment, Earle "move[s] this court to grant his motion for relief in the form of deportation as soon as possible."  [Doc. 1, at 2].  Earle reiterates this request for relief in his Reply [Doc. 10] to the United States' Response to Petitioner's Motion, wherein he again asks the Court to order that he be deported immediately, before his sentence has run.

4.  On December 16, 1991, the INS lodged a detainer against Earle, giving notice that an investigation had been initiated to determine whether he was subject to deportation, and stating that Earle must be transferred to the Federal Detention Center in Oakdale, Louisiana before the end of his sentence.  [Doc. 8, Ex. 4].  On May 15, 1995, a United States Immigration Judge ordered that Earle be deported.  [Doc. 8, Ex. 5].[3]

5.  Although Earle argues in this petition that the deportation order was issued in violation of his due process rights, the relief he requests -- a court order for immediate deportation -- is incompatible with this allegation.  Earle does not seek invalidation of the deportation order, nor a new

---

[3]The Court assumes that the order of May 15, 1995 is the same order which Earle refers to as having been issued on March 8, 1995.  Earle has not supplied a copy of any other order, and Respondent states the only order of deportation on record for Earle is dated May 15, 1995.

deportation hearing; rather, he asks that his sentence be cut short so that he can be deported immediately.  This Court does not have jurisdiction to issue such an order.

6.  Congress has plenary authority over immigration matters, as courts have long recognized, and much of this authority has been delegated to the Attorney General of the United States.  Aguilera v. Kirkpatrick, 241 F.3d 1286, 1292 (10th Cir. 2001):

> Recognizing that decisions regarding the admission and exclusion of aliens are most appropriately relegated to the political branches of government, courts ensure only that the Executive Branch enforces immigration laws in accordance with the procedural safeguards established by Congress.

In establishing the INS as part of the Executive Branch under the Attorney General, Congress gave the INS "far reaching authority to deport aliens . . .  The courts are brought into the process only after the Attorney General reaches a final decision on deportability." United States v. Phommachanh, 91 F.3d 1383, 1386-87 (10th Cir. 1996).  There are only very limited exceptions to the general principle that immigration matters are not generally a function of the judicial branch, and none of those exceptions is applicable in the present proceedings.

7.  Earle is a "deportable" alien, as defined in federal immigration statutes.  Under 28 U.S.C. § 1227(a)(2)(A)(i) and (iii), the Attorney General may order the removal of an alien who has been convicted under state or federal law of a "crime of moral turpitude" or an "aggravated felony."  Earle was convicted of first degree murder under the law of the District of Columbia , and he therefore falls within the class of deportable aliens under either or both of these subsections.  DeLucia v. Flagg, 297 F.2d 58, 60 (7th Cir. 1961) (murder is a crime of moral turpitude); 28 U.S.C. § 1101(a)(43)(A), and Tapia-Garcia v. United States, 53 F. Supp. 2d 370, 374 (S.D.N.Y. 1999) (murder is an aggravated felony as defined in immigration statutes).

3

8.   When an alien is convicted of an offense which makes him deportable, although the Attorney General is directed to initiate removal proceedings as expeditiously as possible, 28 U.S.C. §§ 1228(a)(3)(A), 1229(d)(1), the Attorney General cannot be compelled to effect removal of any incarcerated alien prior to his release, and a private right of action for enforcement of the removal statutes is explicitly prohibited.  28 U.S.C. §§ 1228(a)(3)(B), 1229(d)(2).

9.   Indeed, the Attorney General generally does not have authority to remove an imprisoned alien before the end of his term of incarceration.  28 U.S.C. § 1231(a)(4)(A).  There is one exception to this statutory directive for aliens convicted of nonviolent offenses, but only when the Attorney General determines that removal is "appropriate and in the best interest of the United States."  28 US.C. § 1231(a)(4)(B)(i).  In the present case, the offense of which Earle was convicted, first degree murder, was not a nonviolent offense.  Furthermore, the United States Attorney opposes his immediate deportation, and there is no other indication that the Attorney General has determined that Earle's release is in the best interest of the United States.  Even if these considerations were not present, the statute again precludes a private right of action to force any state or federal official "to compel the release, removal, or consideration for release or removal of any alien."  28 U.S.C. § 1231(a)(4)(D).  *See also*, <u>United States v. Casas</u>, 929 F. Supp. 1317, 1318 (C.D. Cal. 1996) ("only the Attorney General may initiate such a deportation.  Neither the defendant nor the court can initiate it"); and <u>Chacon-Castellanos v. Reno</u>, 943 F. Supp. 26, 28  (D.D.C. 1996):

> Although Petitioner's prison sentence has not yet been completed, he seeks effectuation of the deportation order ... by an order from this Court directing the Attorney General to deport him immediately ... [T]he authority to deport an alien who is a federal prisoner prior to the completion of his sentence of imprisonment is discretionary with the Attorney General of the United States, and depends upon her finding that the immediate deportation is in the best interest of the

United States. Accordingly, the statute confers no right, express or
implied, on Petitioner to compel the Attorney General to deport him.
The Attorney General's failure to exercise her complete discretion
does not give rise to any claim by an alien to force deportation. Every
court to have addressed this issue has so concluded. [Internal
punctuation omitted].

10.    Congress does allow for some limited judicial involvement in removal proceedings;

however, this provision, like the others, is of no aid to Earle.  A district court has jurisdiction at the

time of sentencing to enter a judicial order of removal but only if such order has been requested by

the United States Attorney, with the concurrence of the Commissioner of the INS.  28 U.S.C. §

1228(c).  No such request and concurrence occurred in Earle's case, and he may not now rely on this

exception to effect his deportation prior to completion of his sentence; in any case, there is no private

right of action to compel immediate deportation under this section.  Thye v. United States, 109 F.3d

127, 129 (2d Cir. 1997) ("there is also not the slightest indication that Congress intended that the

provision be enforced through private litigation"); United States v. Flores-Uribe, 106 F.3d 1485,

1487 (9th Cir. 1997) ("jurisdiction cannot be conferred by a request initiated by the alien"); Tapia-

Garcia, *supra*, at 386:

Thus, while the statute gives the Attorney General discretion to
initiate deportation proceedings for non-violent offenders ..., it does
not give an incarcerated alien a right to be deported nor any cause of
action to require the Attorney General to exercise her discretion ...
Tapia-Garcia is not entitled to be deported before he completes his
sentence.  This aspect of his habeas claim is frivolous.

11.  It is true that some of the statutory provisions discussed above were added or amended

by the Antiterrorism and Effective Death Penalty Act and the Illegal Immigration Reform and

Immigrant Responsibility Act of 1996 and thus were not in effect, at least not in their current version,

at the time of Earle's conviction and sentencing.  However, the thrust of these amendments was to

5

make explicit the  pre-existing lack of judicial authority to compel or prevent deportation and to confirm the concentration of authority in such matters with the Attorney General.  <u>United States v. Velasquez</u>, 930 F. Supp. 1267 (N.D. Ill. 1996); <u>United States v. Marin-Castenada</u>, 134 F.3d 551, 556 (3d Cir. 1998) ("the statute does nothing to expand its [the district court's] rather limited powers on issues of deportation").

12.   One final avenue for judicial involvement in deportation proceedings comes the Court's habeas corpus jurisdiction.  Although all circuits do not agree, the Tenth Circuit holds that a prisoner under a final deportation order is "in custody" for purposes of habeas corpus, and federal courts have jurisdiction to hear immigration matters brought to them in the course of habeas proceedings. <u>Aguilera</u>, *supra*, at 1291.  Persons subject to deportation are entitled to due process in removal proceedings, a right that can be enforced under § 2241.  <u>INS v. St. Cyr</u>, 121 S. Ct. 2271, 2001 WL 703922, at *1 (2001); <u>Jurado-Gutierrez v. Greene</u>, 190 F.3d 1135 (10th Cir. 1999), *cert. denied*, 529 U.S. 1041, 120 S. Ct. 1539 (2000).

13.   Again, this principle does not aid petitioner herein.  Earle bases his § 2241 claim on lack of due process, in that the deportation proceedings in his case were initiated before the appeal of his criminal conviction was final.  As noted above, however, the relief he requests is incompatible with his allegation.  He asks that a deportation order, which he asserts is constitutionally defective, be immediately enforced and that he be deported prior to completion of his sentence.  Respondent argues that Earle has essentially conceded the validity of the deportation order by seeking its immediate enforcement, and the Court agrees.  In the case cited and relied upon by Earle, <u>Will v. INS</u>, 447 F.2d 529 (7th Cir. 1971), petitioner won, but he did not ask for nor receive immediate deportation; rather, the court set aside the deportation order subject to further administrative proceedings once the appeal

in petitioner's underlying criminal case was concluded.  While this Court may have jurisdiction to contemplate Earle's habeas petition, it does not have jurisdiction to grant the requested relief.

14.  In addition to his petition, Earle filed a motion to amend [Doc. 10].  He does not did submit a proposed amended petition, and the Court cannot discern any new arguments or claims which would be added by an amendment; rather, the motion to amend appears to be a restatement of his original petition, and it will be denied.  In addition, Earle filed a Motion for Discovery and Disclosure [Doc. 9], seeking production of copies of his INS files and records of proceedings before the immigration judge.  In light of the recommended disposition of his petition, this motion is denied as moot.

## <u>Recommended Disposition</u>

That Earle's petition for habeas corpus under 28 U.S.C. § 2241 be denied and the case dismissed with prejudice, and that all pending motions, including Earle's Motion for Discovery and Disclosure [Doc. 9] and his Motion to Amend [Doc. 10] be denied as moot.

_____
Lorenzo F. Garcia
United States Magistrate Judge